2007 BNH 024
_____

# UNITED STATES BANKRUPTCY COURT
## for the
### DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>Paul A. Harris,<br>     Debtor<br><br>Joel B. Alvord,<br>     Plaintiff<br>Michael Askenaizer, Trustee,<br>     Intervenor–Plaintiff<br><br>v.<br><br>Paul A. Harris,<br>Limestone Real Estate, Inc.,<br>Garden Innovations LTD,<br>Indoor Garden Systems of NH LTD,<br>     Defendants | Bk. No. 05-12973-MWV<br>Chapter 7<br><br><br><br><br><br><br><br>Adv. No. 06-1063-MWV |

*Kelleigh L. Domaingue, Esq.*
*Kevin Devine, Esq.*
*DEVINE & NYQUIST, P.A.*
*and*
*Timothy P. Smith, Esq.*
*Attorneys for Joel B. Alvord*

*Edmond J. Ford, Esq.*
*FORD, WEAVER & MCDONALD, P.A.*
*Attorney for Trustee*

*Paul A. Harris*
*Pro se*

## MEMORANDUM OPINION

        In two previous memorandum opinions, the Court denied Paul A. Harris's (the "Debtor") motion to convert his case to Chapter 13 and his attempt to amend his exemptions, both denials based on findings of the Debtor's bad faith. Now before the Court is creditor Joel B. Alvord's (the "Plaintiff") Motion for Summary Judgment in which he seeks summary judgment on Counts IV, V, and VI of his eight-count

complaint. Counts IV, V, and VI each seek denial of the Debtor's bankruptcy discharge pursuant to section 727(a).[1] After the Debtor's failure to file a timely objection to the Plaintiff's motion, the Court canceled a scheduled hearing and took the matter under submission. Then, six days after the hearing was to have been held, the Debtor filed an untimely objection. For the reasons set forth below, the Plaintiff's motion for summary judgment is granted with respect to Counts IV and VI and denied with respect to Count V.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND[2]

The Debtor was the principal and sole shareholder of Indoor Garden Systems of New Hampshire Ltd. ("Indoor Garden"), which developed and sold gardening devices such as the StandUp Garden. Between December 2003 and August 2004, the Plaintiff invested $485,000 in Indoor Garden over the course of four transactions. The notes memorializing these transactions provide that the Plaintiff was granted priority security interests in the assets of Indoor Garden, though the Debtor withheld from the Plaintiff the fact that the Debtor held security interests in the same assets that were senior to the Plaintiff's interests. The Debtor's home and a vehicle were owned by Lochinvar Holdings, Ltd. ("Lochinvar"),

---

[1] All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101 to 1330.

[2] More details concerning the events of this case can be found in two memorandum opinions previously released by the Court. In re Harris, 357 B.R. 1 (Bankr. D.N.H. 2006) (denying the Debtor's motion to convert to Chapter 13); In re Harris, 2006 BNH 048 (disallowing the Debtor's amended claim of exemptions).

another corporation owned by the Debtor. Indoor Garden paid rent to Lochinvar and the Debtor paid his personal expenses with a credit card issued to Lochinvar. Lochinvar also lent money to Indoor Garden.

The day before filing his Chapter 7 petition on July 28, 2005, the Debtor foreclosed on the assets of Indoor Garden, thus transferring the `assets to himself. A few days post-petition, August 1, the Debtor created Garden Innovations Ltd., the business of which was essentially identical to that of Indoor Garden, and transferred the foreclosed assets to Garden Innovations in exchange for founders stock, though the Debtor concedes that this transaction was not reduced to writing. The next day, August 2, the Debtor wrote to the Plaintiff informing him that the assets had been foreclosed upon effective July 28, that Indoor Garden was out of business, and that there was no money to pay its creditors. The letter made no mention of the bankruptcy filing or the creation of Garden Innovations. Similarly, the Debtor did not inform the Chapter 7 trustee of the transfer to Garden Innovations or Garden Innovations' continued use of the assets.

The Debtor's Schedule B listed the current market value of the "Inventory, tools & mold formerly belonging to Indoor Garden Systems, Ltd." as $8,600.[3] The Debtor continued using the assets to produce StandUp Gardens that he sold through Garden Innovations. At a February 16, 2006, examination of the Debtor conducted pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "Rule 2004 examination"), the Chapter 7 trustee instructed the Debtor to cease business operations, and the Debtor agreed. However, the Debtor admitted at an April 17, 2006, hearing that he had continued to sell StandUp Gardens and estimated that Garden Innovations had generated approximately $85,000 in post-petition revenue.

In addition to the Debtor's personal bankruptcy case, Lochinvar and Garden Innovations are debtors in pending Chapter 7 cases. In the Lochinvar case, relief from the automatic stay was granted,

---

[3] By the time the Debtor filed his schedules a few weeks post-petition, these assets had long been transferred to Garden Innovations.

and the Debtor's home was sold in a foreclosure sale at which the winning bidder was another corporation created by the Debtor, Limestone Real Estate, Inc. Finally, on a motion filed by the trustees of both the Debtor's case and the Garden Innovations case, the Court approved the sale of the assets formerly belonging to Indoor Garden to the Plaintiff for $55,000.

## DISCUSSION

The Plaintiff moves for summary judgment on three counts seeking denial of the Debtor's discharge under section 727(a)(2)(B), (a)(3), and (a)(4)(A). Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting Fed. R. Civ. P. 56(c)). Courts ruling on a motion for summary judgment should read the "record in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

I.     Count IV: Section 727(a)(2)(B)

The Plaintiff urges that Harris's discharge be denied because of the Debtor's post-petition transfer of the assets to Garden Innovations. Section 727(a)(2)(B) provides:

> (a) The court shall grant the debtor a discharge, unless—
>
>> (2) the debtor, with intent to hinder delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>>
>>> (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(B).  To be denied a discharge, the Debtor must have (1) transferred (2) property of the estate (3) post-petition (4) with the intent to hinder, delay or defraud the Chapter 7 trustee or a creditor.

On the issue of whether the assets were property of the estate, the Debtor foreclosed on the assets of Indoor Garden the day before filing his bankruptcy petition and did not transfer the assets to Garden Innovations until a few days post-petition.  Accordingly, this Court has previously determined that because those assets were owned by the Debtor on the petition date, they became property of the Debtor's bankruptcy estate upon filing.  In re Harris, 357 B.R. 1, 3 (Bankr. D.N.H. 2006); In re Harris, 2006 BNH 048, at 2.  Also, there is no dispute that the transfer to Garden Innovations occurred post-petition.

Next, the Court has also previously found that the Debtor transferred the assets and concealed his use of them.  Id at 4.  Indeed, in his objection to summary judgment, the "Debtor stipulates that he conveyed assets to a newly formed entity, Garden Innovations, Ltd." (Ct. Doc. No. 26 at 5.)

The remaining issue is whether the Debtor transferred the assets "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property."  11 U.S.C. § 727(a)(2).  In order to deny the Debtor's discharge, the Court must find actual intent, which may be inferred "from the facts and circumstances surrounding [the Debtor's] actions."  In re Marrama, 331 B.R. 10, 15 (D. Mass. 2005).  Beginning with whether the Debtor intended to hinder, delay or defraud the Chapter 7 trustee, the following facts are undisputed.  When the Debtor formed Garden Innovations a few days post-petition, he did not inform the Chapter 7 trustee.  When the Debtor transferred the assets to Garden Innovations, he did not inform the trustee.  When the Debtor proceeded to generate revenue of approximately $85,000 between the July 28, 2005, petition date and April 2006, the Debtor did not remit any of the revenue to the trustee.  At the Rule 2004 examination in March 2006, the Chapter 7 trustee reminded the Debtor that the assets are property of the bankruptcy estate and instructed the Debtor not to sell any more products derived from the inventory.  In re Harris, 357 B.R. at 5.  Nevertheless, one month later the Debtor admitted that he had continued selling StandUp Gardens.  Based on the above facts and

circumstances, the Court is convinced that the Debtor transferred the assets to Garden Innovations and then concealed his use of them with the intent to hinder, delay, or defraud the Chapter 7 trustee.

Additionally, the Debtor's transfer of the assets from the bankruptcy estate to Garden Innovations also evidences an intent to hinder, delay or defraud the Plaintiff.  The Debtor wrote to the Plaintiff on August 2, 2005, to inform him that Indoor Garden was out of business, that the Debtor had foreclosed on the assets, and that there was no money to pay creditors.  This letter to the Plaintiff came five days after the Debtor filed his bankruptcy petition and one day after the Debtor created Garden Innovations and transferred to it the assets formerly owned by Indoor Garden.  Yet the Debtor decided not to mention either the bankruptcy or the existence of Garden Innovations to the Plaintiff, a creditor who had invested $485,000 in Indoor Garden.  The Court can only conclude that the Debtor intended to hinder, delay or defraud the Plaintiff, too.

The Debtor argues that he could not have concealed the transfer or use of the assets because he filed the proper documentation with the New Hampshire Secretary of State when he incorporated Garden Innovations.  This argument is unavailing, as the Debtor nevertheless concealed the transfer and use from the entities relevant to his bankruptcy case, namely, the Chapter 7 trustee, the Court, and creditors.  Cf. R.I. Depositors Econ. Prot. Corp. v. Hayes (In re Hayes), 229 B.R. 253, 257 (B.A.P. 1st Cir. 1999) (although B.A.P. reversed, it did not disturb the bankruptcy court's holding "that real estate interests may be 'concealed' within the meaning of § 727(a)(2)(A) even if they are reflected in public records").  The Debtor has presented no facts to support his contention that the transfer was merely "mishandled" rather than "evasive or dishonest."  (Ct. Doc. No. 26 at 5.)  Based on the undisputed facts and the prior findings of this Court, the Court concludes that the Debtor's post-petition transfer and concealment of assets that were property of the Debtor's bankruptcy estate was done with the intent to hinder, delay, or defraud the Chapter 7 trustee and the Plaintiff.  The Debtor's discharge is therefore denied pursuant to section 727(a)(2)(B).

II.     Count V: Section 727(a)(3)

The Plaintiff alleges that the Debtor has failed to preserve books and records such that the Debtor's discharge should be denied pursuant to section 727(a)(3), which provides:

(a) The court shall grant the debtor a discharge, unless—

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).

The Plaintiff states that, prior to the Rule 2004 examination, the Debtor was served a subpoena directing that he bring to the examination certain documents relating to the finances of Indoor Garden and Lochinvar. Specifically, the Plaintiff maintains that these documents would reveal that the Debtor routinely purchased bank checks in large sums. In addition to other documents, the Plaintiff wanted copies of these bank checks. The Debtor does not dispute that he failed to bring much of the requested documents to the examination, though he maintains that he cannot produce many of the documents because of a computer problem. The Debtor further argues in his answer "that the ledgers and journals of Indoor Garden and Lochinvar are not material or relevant under § 727(a)(3) of the Bankruptcy Code because § 727(a)(3) pertains only to his individual financial condition or business transactions, and not to those of the separate corporate entities." (Ct. Doc. No. 7 at ¶ 77.) The Court disagrees. The Debtor has testified that in the relevant pre-petition period he did not have a personal checking account and that he paid all of his personal expenses with a credit card issued to Lochinvar, the corporation that owned his home. Considering this arrangement, the financial documents of Indoor Garden and Lochinvar are highly relevant to the Debtor's financial condition.

Although the Court has previously noted the Debtor's failure to produce an accounting of his personal expenditures, summary judgment is not warranted on this count. In re Harris, 357 B.R. at 6. The Debtor alleges a computer glitch. The Plaintiff points to his need for copies of bank checks, but the Debtor claims to have produced at least some of them. Also, it is unclear what light the bank checks

would shed upon the Debtor's financial condition, though the Court is certainly not unconvinced of their utility. The alleged computer glitch and the lack of clarity with regard to which records have or have not been kept, preserved, or since provided prevents the Court from granting summary judgment in light of section 727(a)(3)'s clause that a failure to keep or preserve records might be "justified under all of the circumstances of the case."

III.     Count VI: Section 727(a)(4)(A)

Section 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account[.]

11 U.S.C. § 727(a)(4)(A). To warrant denial of discharge, the false oath must relate to a material fact. Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).

The Debtor filed with his schedules and Statement of Financial Affairs a signed oath that the information contained therein was true and correct. The Court has previously found that the Debtor knowingly undervalued the assets at $8,600 on his Schedule B. In re Harris, 357 B.R. at 4. Even if the Court was inclined to accept the Debtor's claim that $8,600 was the liquidation value of the inventory, listing the liquidation value is in contravention of Schedule B's instruction to list the current market value. Listing the liquidation value is also inconsistent with the Debtor's use of the assets. See id. ("The Court is unconvinced that the Debtor honestly believed the assets to have little value or that his valuation was partially based on disposal costs."). The Debtor did not intend to liquidate or dispose of the assets.

The fraudulent nature of the undervaluation is shown by (1) the creation of a new corporation a few days post-petition to which the Debtor quickly transferred the assets, (2) the continued use of estate assets without informing the Chapter 7 trustee, (3) the generation of at least $85,000 in revenue from the assets, and (4) the continued use of the assets even after the Chapter 7 trustee instructed the Debtor to stop. Potential benefits of undervaluing the assets were that they might be exemptible in their entirety,

there was a greater chance of them avoiding the attention of a liquidating Chapter 7 trustee, and the Debtor might have been able to buy them from the trustee at the price listed by the Debtor rather than at market value. As stated above, the Debtor had his own plans for these assets all along.

As for materiality, these assets were at the core of Indoor Garden's and Garden Innovations' business, and their value has been at the center of nearly every dispute in this eventful case. Because the Debtor has made a knowing and fraudulent false oath with respect to a material fact, the Debtor's discharge is denied pursuant to section 727(a)(4)(A).

## CONCLUSION

Having failed to appeal any of the Court's prior findings and rulings upon which the Plaintiff's case partly rests, those findings and rulings have become the law of the case. As such, the Debtor's disputation of the Court's prior findings does not create a genuine issue of material fact. There being no disputed material facts with respect to Counts IV and VI, the Plaintiff's motion for summary judgment is granted. With respect to Count V, summary judgment is denied. Pursuant to Federal Rule of Civil Procedure 54(b), which is made applicable by Federal Rule of Bankruptcy Procedure 7054(a), the Court determines that there is no just reason for delay and directs the entry of a final judgment with respect to Counts IV and VI. A status conference, if necessary, shall be held on <u>July 17, 2007, at 11:00 a.m. in Bankruptcy Courtroom 1, 11th Floor, 1000 Elm Street, Manchester, New Hampshire</u>. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

DATED this 7th day of June, 2007, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge
